The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and its honored court. Our records, the submitted case is Newsom v. Treasury, 2009-3019. First case to be orally argued is 2008-1599, Excel Innovations v. You Technology. Mr. Charles, you reserve five minutes for rebuttal and whenever you're ready. Good morning, Your Honor. Gregory Charles of Campo Goodsell Smith. With me in court today is Mr. Bornstein of Bornstein and Bornstein. As I said, I'd like to reserve five minutes for rebuttal. First, I'd like to address the standing and the mootness issues because I think it's a jurisdictional consideration that the court really has to satisfy itself with before it goes any further in the case. I think that the appellees principally relied on Rule 25 to say that this action can continue unabated because there had been a transfer of interest. I wanted to address the final judgment issue question. I'll be glad to address the final judgment issue question. Undoubtedly, it's a unique circumstance that we faced. Our principal concern with the final judgment issue related to the fact that if a notice of appeal is not timely filed, that's a jurisdictional consideration. So based on what Rule 58 said, we had to notice the appeal when we did because had 180 days gone by after the April 11th order issued and we noticed appeal later on, the appeal could have been dismissed for not being timely. That's not the issue I think that Judge Crost wanted to raise. She was asking about the finality of the judgment. Is it a final judgment? Do we have jurisdiction over this case? In fact, I believe that you have jurisdiction over the case. As a matter of fact, the court does have jurisdiction over this case. Well, the terminating sanctions motion is still extant, correct? The terminating sanctions motion was moot when it was filed, Your Honor. Why is it moot? A motion for terminating sanctions is a motion to dismiss a claim or a group of claims. There's no doubt about that. When the court granted summary judgment with respect to the ownership issue, that resolved Excel's claim for declaratory judgment with respect to ownership. It also resolved all of Excel's infringement claims because you cannot sue for infringement unless you own the patents. Although the district court, I think the district court sort of acknowledged that effectively Excel's infringement claims have been resolved, but am I not correct that the district court has not entered an order or otherwise actually addressed Excel's infringement claims? I would say that you're correct that there's no order in the record saying Excel's claims are now dismissed, but infringement is a statutory claim and the first element of a statutory claim of infringement is that you own the patents. And Excel, the court found in April 2004 that Excel does not own the patents at issue. And when the court issued that order on April 11, 2008, it said all claims, counterclaims, and counter-counterclaims have been resolved in this case either by adjudication or dismissal. So to answer your question, I think that order speaks to that issue because the court said all claims have been resolved. But that order was issued after the Indivos and Solidus bankruptcy, correct? It was issued after Indivos and Solidus bankruptcy, that is correct. So to the extent that that order can't be interpreted as addressing the merits of Excel's claim because that claim was subject to the automatic stay under the Bankruptcy Act. I don't think that's correct, Your Honor, because 11 U.S.C. 3062 does impose a stay upon the filing of the bankruptcy, and the bankruptcy was filed the December before that order. But four years before the bankruptcy was filed, the court issued the summary judgment order finding that Indivos and Solidus owned the patents. There's no stay at that point because the court has already adjudicated that issue. I mean, I agree with you, and you won't get any disagreement, I think, from any of us on the panel that without ownership, a patentee has a standing problem. But the question is whether there has been an adjudication of this issue or whether that issue is just sort of hung up for one reason or another in connection with this bankruptcy such that the matter before us is not final. Your Honor, it's not hung up in the bankruptcy in this context because Excel's ownership claims were not subject to the automatic stay. And the reason why that happens is the automatic stay is effectively a one-way street. If Able Company sues Baker Company, and Baker Company, like Excel, claims that it owns patents, and Able Company claims it owns patents, then Able Company files for bankruptcy. Able Company, although a debtor or a debtor in possession, can still defend any claim that's brought against it. The automatic stay would preclude Baker Company from pursuing a claim against Able. So are you talking about the bankruptcy case, saying that the district court was wrong that she couldn't rule on the motion, terminating sanctions motion, because of the stay? Even if you're right, why does that help us in terms of having a final judgment? All that means is she was wrong and she should have dismissed those or dismissed without prejudice or ruled on it or done whatever she was going to do. But, you know, in most cases where we—in the patent cases where we have finality issues, it's because there's some pending counterclaim that the district court just didn't notice, and therefore it needs to be dismissed without prejudice for us to be able to proceed. Why is this any different? No, and I agree with that, that sometimes in appeals you sort of have a claim laying out there. But that's why the April 11th order is so important for us, because it's an affirmative statement by the district court, and it cannot be more clear that says that all claims have been resolved in this case. And she said either by adjudication or dismissal. And then after that, the magistrate proceeded to resolve the other issues, right? And that was patently improper. And the reason why it was improper, because the motion for terminating sanctions at that point was nothing but a request for an advisory opinion. But was it really advisory at that point, or was it a question of still remaining pending for sanctions? Now, is a sanctions motion that was filed, that was more of a discovery under Rule 37, wasn't it, not Rule 11? It was a Rule 37-based motion. That is correct. But to the extent that it related to discovery, there's no discovery in a district court once all claims have been adjudicated. And if a discovery sanction is, the range of sanctions could be a monetary sanction, which was actually precluded in this case because Excel is bankrupt. It could be an evidentiary sanction, which either by excluding evidence or by giving an instruction to the jury, or the most draconian sanction of all, it could be a sanction of dismissal. And that's the sanction that was sought in this case. But you agree if it were a monetary sanction, it would still be a lie, that this would not be a final judgment if that were a monetary sanction, right? You're predicated on the fact that it was intertwined with the mootness of the other case. I mean, if it's a monetary sanction, isn't it just, well, you'd say it would be like attorney's fees then if it were a monetary sanction. I think it's a collateral issue at that point. But by the court entering the order saying that all claims have been resolved, the motion is directed to a claim. And when a claim no longer exists, the motion was moot. It was moot when it was filed. The reason why, the reason, quite frankly, that the motion was filed, and counsel basically stated as much in the record, is that they were concerned about the summary judgment motion. And they basically said, we're concerned that if this case goes up on appeal, that if it's reversed, it's going to come back on a tainted record. And we don't want to bear the risk of having to try this case if it's reversed. But I don't understand your point. You're saying there's a final judgment because all of the claims have been resolved. So you're saying we should treat this as if the district court had dismissed it, even though she didn't dismiss it? I think when you say dismiss, you're talking about the motion? The motion. Right. The district court took no action on the motion for a year. It just sat on the docket before any bankruptcy. Well, what's the answer to my question? The answer to your question, Your Honor, is very clear. And Rule 58 says that once all claims have been resolved, judgment enters by operation of rule 150 days later. Now, mind you, in every case that I've ever had in federal district court, the clerk, as a matter of course, issues judgment. And the clerk didn't issue judgment in this case. But this is exactly the situation that Rule 58 contemplates. That if you have an order disposing of all claims, 150 days after that order's entered on the docket, judgment issues as a matter of rule. And that's exactly what happened in this case. So to the extent the court's concerned that there's no final judgment, no. If you look in the record, obviously there's not a judgment issued by the clerk. But there didn't need to be a judgment issued by the clerk because Rule 58 says judgment issued as a matter of course. Based upon the order of April 11th? Yes. Let me ask you a question. Hypothetically, if we affirm the court below on this case, does that make the motion for sanctions still applicable? Or according to your theory, it's moot? To answer your question, and I got back to my previous comment that the appellees were concerned that if the case were reversed, they would have to come back and bring this motion. If this case is affirmed, that motion is moot because the case stands in the same fashion that it stood in the district court. Indivose, NXL, and now U Technology own those patents. If the court affirms it, that motion is moot. Now, if it was moot when it was filed, now if this court were to... Now, let's step back a minute. If in fact we affirm, is that motion for sanctions and if it was a monetary sanction request, that would not be moot, would it? Well, I'll try to answer your question directly because there's a technical aspect of it. There could not be a motion for monetary sanctions and the reason why is because EXCEL is a debtor and debtor in possession and a motion for monetary sanctions would violate the automatic stay in EXCEL's bankruptcy and to the extent that Indivose and Solidus got relief from stay, that was a condition. But the bankruptcy court did allow the suit to proceed. There are two different bankruptcies, Your Honor. Indivose and Solidus are bankrupt. And EXCEL. Yes. Right. But Indivose and Solidus could not seek monetary sanctions against EXCEL. But, so to answer your question, it's not an issue, but the motion was moot when it was filed and that's my position. Because of the bankruptcy. No, it was moot when it was filed because the court granted summary judgment fining Indivose and Solidus on the patents. I'm actually, I'm in my... No, that's fine. You've been asked a lot of questions. We'll add some time to it. Judge Lynn has one. You're arguing that the April 11th order, in effect, dismissed all the claims, counterclaims, and resolved. It recognized that all the claims and counterclaims have been resolved. Well then, what is the meaning of the stipulation of, I guess it was entered August 15, 2008. In the Central District? Yes. Your Honor, we entered it in that stipulation and I do a fair amount of bankruptcy work. We call that prophylactic relief from the automatic stay. And what we do is that we go into the bankruptcy court and we'll say, well, Your Honor, we don't think the stay applies. But just so that there is absolute certainty, so we've briefed this issue, it gets reported to the Federal Circuit. And the Federal Circuit says, there's a bankruptcy, isn't this case stayed? So we obtain that type of relief just so the record is very, very clear that the case can go forward. But the stipulation was that since Excel is hereby granted relief from the automatic stay to prosecute the patent case to final judgment.  And certainly by inference, if not explicitly, recognizes that a final judgment has yet to be entered. Your Honor, that was the stipulation. Well, I'll answer it in two ways. Since I wrote that stipulation, what I was thinking is that a judgment is not final until it's been subject to appellate review or a person waives its right to appeal. But the second issue is that stipulation was entered before the 150-day period lapsed. We stipulated well before the 150-day period lapsed, so judgment had not been entered at that point. Can I ask some questions, Governor? Okay. We can move to the merits. I know your time is short. Yeah, I've got a minute and a half, but I'll be glad to address it. We'll add some time to the clock. Okay. The only time that the judge can really stop the clock and stop the world, right? I'm glad to answer all your questions. I'm glad you're interested. There are several issues here. Let me turn to the one that deals with whether or not it was a present assignment, whether it was effectuated immediately, or whether it was some time in the future. Firstly, so your view is it wasn't immediate. So when, if ever, was it to go into effect, or when, if ever, did it go into effect? I mean, you're saying it wasn't a present assignment, so what is the future? Well, first of all, it's our contention that it wasn't an assignment at all. I mean, that was an alternative argument because of the license agreement. Okay. Well, assume it's a license. When did it go into effect? What I'm talking, what I'm mentioning, Your Honor, is that, I'll back up. What the agreement says is that Excel is assigning certain patent rights, but it doesn't say what those rights are. And it may be an obligation to assign certain patent rights, but those rights were never actually assigned. When does it go into effect? It would go into effect when the parties effectuated that agreement with some other type of acknowledgement or agreement between the parties. So it's a present assignment. It's not a future assignment. It could be an obligation to, I'd characterize it as an obligation to do something in the future. When in the future? When? It doesn't state. I mean, that's not a term of the agreement. I mean, what kind of agreement is this then? If, you know, it's sort of some time in the future to be determined at some later date. We agree to do this? That's your view of how we should go through this? I think it's probably analogous to a letter of intent. So where is the district court then in error when she decided the summary judgment? Well, the main error that the district court had is that the district court, you know, laid out a very long history of the case, all the agreements of the parties. But the key to the summary judgment error was that the court said the agreement between the parties, the operative agreement, is arguably ambiguous. I mean, that's a finding that the district court made. And then we know the district court considered it to be ambiguous because at that point the court considered all this parole evidence extraneous to the agreement. Now, the error is… But isn't it clear from the record that, I mean, where she found the ambiguity was with respect to the scope, right, of whether or not it was just fingerprints or whether it included the other stuff. Wasn't that the aspect of the agreement that she found ambiguous which led her to extrinsic evidence on that point and not on all others? The rule in California, and we cite the Maffei decision, is that once a court finds an agreement to be ambiguous, summary judgment is not available as a matter of law in California. Is California law applicable to the agreement or is it Federal Circuit law which is applicable? You know, actually, I looked at that issue before we came to court because that wasn't absolutely clear in the briefs and I wanted to square the corner on that. We had cited Maffei and the appellees had cited the Southern Pacific case. Our decision is a decision of the California Court of Appeals and it's well-settled law. To answer your question directly, I located a case the other day called Designed by Scaffolds, Inc. and it's a 2002 decision of this court and it's reported at 35 Federal Appendix 867. And that case involved a leased license agreement and I'll quote two passages from the agreement. And it says, the license agreement specifically provides that it should be construed in accordance with Pennsylvania law. And then this court went on to say, in interpreting the agreements, we thus apply Pennsylvania law. We follow the law of contracts as interpreted by the highest court of the state. And that case actually involved extrinsic evidence. I'll note that the operating agreement in this case specifically contains a choice of law provision and it states that California law shall be controlling. So I think that this court would apply California law. Well, there's a conflict among our cases in that area. I'm sure you recognize that. I recognize that. So it's not as clear as mud. I was trying to give the court some time. I recognize that fact. But to answer your question, I believe that California law controls because the parties... And which one of the cases that you cite is the one that's absolutely clear on that you can't grant summary judgment? We cited the Maffei case, Your Honor. And we also... What's the citation on that? The citation... Okay, it's the 1993 Ninth Circuit case? Yes, it's 12-Fed-3892. And we also cited... But isn't... I mean, they come back with Glenn Miller, right? That's correct. But we also cite California Casual Indemnity Exchange v. Freaks. Yeah, but aren't they right that Glenn Miller does seem to suggest something contrary to how you're reading Maffei? I think if you... And I'll address this very specifically in the reply brief. But the case law on which Southern California cast relies is in part based on Canadian law. And I look for a Ninth Circuit case along the lines of, you know, here's... If it's a supplemental claim, we apply the state law. If it's just a claim under common law, we would apply Ninth Circuit law. I couldn't actually find that case, but when I looked at it... Yeah, but Glenn Miller was applying California law, notwithstanding the reference to the Canadians. But there were federal claims in that case. And the cases we cited relate to supplemental jurisdiction. So I don't think that it could be read as superseding the case. And, in fact, you know, the most I could say about the Appellee's case is it says that we ordinarily don't consider extrinsic evidence. So the general rule in California, in the federal Ninth Circuit, is that you don't consider extrinsic evidence. But I think the California case law is absolutely clear, and I think that California law is going to control over Ninth Circuit authority in this case. Thank you, Mr. Charles. We'll restore three minutes of your rebuttal time. Mr. Davis, we'll add five minutes to your time, if you need it. Thank you, Your Honor. It may please the Court. Mark Davis with me at the Council table is David Ameling, and we represent UTechnology in this matter. It may make sense for me just to begin where we, on the Maffei case we were just discussing, which, in the portion of the opinion our opposing counsel actually quotes, says, Under California law, the party may present extrinsic evidence to show a facially unambiguous contract is susceptible of another interpretation. So California law is completely clear that you can look to extrinsic evidence even if the contract, just on its face, is unambiguous. Before you get into the minute, can I just go back to a question asked? This is on the preliminary issue that we're talking about, finality. Do you agree with your colleague, if we affirm on the summary judgment question that's before us, the issue of the motion for sanctions as moved? The, you know, there may be a big picture, the other side is engaged, or at least the Magistrate has found, in the type of discovery misconduct and faking of documents and concealing of documents and producing fake computers that the litigation system cannot tolerate, and it must be sanctioned in some way. Now, the motion for terminating sanctions, the relief, is obviously we wanted a dismissal on the merits, but we also sought fees, and we will go back and ask for fees. Procedurally, it's not clear to me exactly how that works, but the conduct is still not moved. The challenge to that conduct is not moved. But can you assess fees and costs against the bankruptcy estate? Well, if there's a problem with that, then we can try and get relief from the bankruptcy court, but that's sort of a procedural hurdle. The ultimate problem here is that the other side is engaged in misconduct, and there are, of course, procedures by which the district court can punish that conduct. But aside from this conduct, hypothetically, if we affirm the case and the matter is resolved by an affirmance, is the motion still extended at that point of time, just like a Rule 11 motion that could be made, which remains outstanding even though the judgment is final? I think what we'd probably do would be renew the motion and maybe recaption it. I'm not sure. Is there a consequence to whether or not we say the same conduct and then go after fees only, as opposed to right now where we're seeking fees and a termination on the merits? We couldn't get the relief of termination on the merits because after this court rules and if the bank proceedings are over and the Supreme Court proceedings are over, at some point it will be over. And you're right. Any motion to terminate on the merits would, in fact, be over. The Rule 11 would be moved at that point. The motion would be moved at that point. I styled the caption, but the fundamental complaint would not at all be moved because we could ask an exceptional case. There's all sorts of procedures by which the litigation system doesn't tolerate this type of conduct. And the fact that we end up winning on the merits despite all the concealment, despite all the shenanigans, doesn't move it in that sort of core sense. But if you say, OK, so the motion is pending. All they ask for is a termination on the merits. They won on the merits. It's all over. In that sense, it's moved. So you are agreeing that Excel's claim for infringement has been resolved, has been decided? Once all the appellate proceedings are over at that point, assuming an affirmance on the merits. Well, what I'm asking you is whether you agree that the district court has indeed resolved Excel's infringement claim. Adversely, yes, Your Honor. So that would mean that there's no pending issue with respect to any Excel claim in the case? Yes, Your Honor. The only question is whether there's a sanction that might be due? Yes, and whether we file it now or file it later, whether we renew it, I don't think that really affects the matter. One of the things that strikes me as a little odd is on the summary judgment. I mean, it seems like the district court here in granting summary judgment decided that any issues or arguments with respect to the license are separate and distinct and don't affect the summary judgment proceeding. That's one of the things that allowed here to go ahead and grant summary judgment in your favor, right? The license was superseded by the agreement, yes, ma'am. Right, but when the magistrate treated that issue, I mean, part of her findings, it seems to me, were compelled by her suggestion that all of this stuff is intertwined and that what happened with the license and all of the issues with respect to the license could undermine, she said, the reliability of future proceedings. I don't know if she was talking about future – I assume she was talking about future proceedings in this case, but it's not clear. It's a confusing record, Your Honor, no question. The – I think what was motivating the magistrate judge, Your Honor, Judge Spera, was a concern that our side not be penalized by their misconduct. So – So was she hedging on the chance that you might get a reversal on summary judgment here? You'd have this to fall back on? Oh, I think it's clear that the magistrate judge was livid about the conduct. I mean, you can go back and stuff in the record. Very early on, the judge was complaining about the conduct and – But if she thinks that conduct was necessarily relevant to this case, doesn't that then undermine your argument here that there are no factual issues in dispute? Well, it really – it's very fine, but what happened was the district court and the magistrate judge, they both think their rulings can stand independently. So there's not a necessary connection between the two. The district court sort of said, look – and by the way, the district court had the sanctions motion before her as well as the summary judgment motion. They said, look, I can rule on the summary judgment motion. All the discovery, misconduct, even if it's all – it just doesn't – it doesn't affect her analysis because she has so much evidence of these agreements, of the insurance policies, of the settlement agreements, that it's obvious from the record what happened here, which was the pens were transferred. And so even if there was all these fake computers, it doesn't really undermine her decision. And so in that sense – Well, I mean, one piece of evidence that the other side argues does undermine the summary judgment is the testimony of Mr. Mendelson, correct? That there is suggestion that there is some reference for the other side that at least is sufficient to call into question with inferences going their way. I think – I believe Your Honor is referring to the clear title mentioned in the reply brief. Right. And there is testimony in the record that Mr. Mendelson explained that when he – by clear title, he means transfer of pen ownership. That was his lingo. Right. Well, the clear title, which he defined as unrestricted – In that particular paragraph. Right. They just quote – look, it was a reply brief and they quoted that snippet. Right. But there is another snippet, which we would be happy to provide the Court, where he explains that by clear title means transfer of ownership. Is that a question of credibility on his part or is that just a question of reading the record properly at that point? I mean, did the district court rely on credibility determination? I mean, it's transfer of title. I mean, you can't – I mean, it's transfer of title. It's transfer of ownership. It's transfer of the patents. I mean, Mr. Mendelson is clear throughout this that that's what he believed had happened. And, you know, language is what language is and we can quote things. But the district court here did a very careful job, looked at lots of different course of conduct over the years, saw the agreement, saw the insurance policy, saw the assignments filed in the patent office on behalf of Mr. Hoffman and the president of Excel saying that Indivas owns these patents. There's just no genuine dispute that Indivas and Salidas own these patents. Mr. Davis, what happens with the finality of the judgment? Do you agree that we have a final judgment before us or not? Do we have jurisdiction over this case?  You know, I think that what is clear is that the tactics are clear, which was to get this case up quickly without having to rule on the summary – having a review of the sanctions motion. I think the tactics are clear. I think how the jurisdictional rules apply here is awfully difficult. Your Honor, we read your opinion and other opinions emphasizing how important it is to make sure of finality. And so when we briefed it, we looked at it extremely, extremely carefully. And we continue to look at it. And to be honest, I still think it's close. But I do think that because we would not be prejudiced by a ruling on the merits – because if a ruling on the merits in our favor doesn't prejudice us, it doesn't delay us, and it doesn't – Wait, wait, wait. So your answer is if you win, it's okay, but if you lose, there's no final judgment. And I knew Your Honor was not going to like that outcome. I mean, I appreciate why you say that. I just don't know that that's something that we can – When you track it through, I agree, and I started and we briefed it the way the panel started this morning, which is there's pretty clearly no final judgment. But when you really start to track it through, the district court's opinion here doesn't turn on anything in the sanctions motion. And the sanctions motion doesn't turn on anything in the summary judgment motion. So in that sense, they are independent and related. And so you can review the summary judgment order in our favor because there's no prejudice. There's no harm. Well, would you then state that the April 11, 2008 order that was signed by the judge to be the final order in the case? Since she points out that all the claims, counterclaims, and counter-counterclaims are dismissed or ruled upon? On the rationale I just gave, yes, that would be the final judgment. Now, the 150-day running is another separate – That's a separate issue. It's a separate issue, Your Honor, yes. But with respect to our jurisdiction, then do we have jurisdiction based upon the judge's final order? Yes, because the only reason that would not be the final order would be the relatedness of the sanctions motion. Now, the sanctions motion, if in fact it is a sanctions motion, it's not a counterclaim, is it? Even though you've tried to get relief by sanctions of a dismissal. Your Honor, if it was a pending counterclaim, then we would have a very clear answer to the jurisdictional question, which is there would be no final judgment. It is not. And the question for the court is really how to characterize it. How would we characterize a Rule 11 motion that's still pending? Well, it's not so much the title of the motion, it's the substance of it. And if the Rule 11 motion was based on conduct that didn't go to the merits, then it wouldn't be related. But if it goes to the merits, then it's related. Is that the determining factor, then, in whether it goes to the merits? Yeah, and that's what this Court has said and the Supreme Court has said. The final judgment ends litigation on merits. And so the question for the court is whether the sanctions motion is sufficiently related to the merits to deem it defeating finality. And I think the right answer is no, and I think that now, but it's hard. It's really hard. I apologize if we've already asked, but on the parole evidence, what's your view on whether or not we apply California law or Federal Circuit law? Apply California law, Your Honor. There would be nothing distinctive to warrant invoking this Court's jurisdiction. Special expertise. Under California law, then, was the judge authorized to issue a summary judgment motion on that basis of the contract? Yes, because once you start looking at the course of conduct, the seven years of silence by the other side, the evidence I referred to earlier, it's obvious that everybody assumed that Endivas and Salidas did own these patents. And it doesn't really matter which law you look to. On this record, Endivas and Salidas owns the patents, and that's why it was appropriate for summary judgment. Is the operating agreement a film tech type hereby grants agreement, or is it an erected, will-be-assigned agreement? Well, we briefed that, Your Honor, and, obviously, we request a suggestion that it's quite clearly an immediate transfer. It's not a sort of, we'll do it later. Well, you, I mean, I was speculating. Yeah, okay, sorry. I didn't mean to interrupt. The questions are, I mean, shall, I mean, there's no date certain. I mean, yes. Why is shall an immediate assignment? Shall is just like will? Will grant? Shall grant? Of course, Your Honor. Words are malleable. I mean, that's what keeps us all in business. But the way the parties operated here, the way the different phrases of the agreement fit together, the purpose, for example, the purpose of setting up the entity was to go about raising money. How would that work if it didn't have the, if it hadn't transferred anything yet? That operating agreement wasn't treated, though, as an assignment, was it? Treated as an assignment. It wasn't recorded in the Patent Office? There were, yes, in 1995 things were recorded. The operating agreement? I'm pretty sure that in 1995 these patents were assigned to SmartTouch. And those assignments were recorded? Yeah, and you can go to the record and look at the patents and it says SmartTouch when he was in Salidas. The patents were recorded, but the agreement itself was not recorded? The agreement itself was not, no, but the fact of assignment, I believe that was recorded with the Patent Office. We could submit a letter on that if you'd like, Your Honor. That would be helpful. One of the problems with your appendix on both sides, it's a joint appendix, there are pages which are missing, there are pages which are misnumbered, there are documents which are not properly referred to, and it's rather difficult to follow it. You're telling me, Your Honor, and although we didn't prepare it, I do apologize, we should have followed it. Oh, your name is on it. Your name is on it, it's a joint appendix. I would hold both of you responsible for it, so it doesn't clearly reflect what you should be filing with this court. Absolutely agree. And I think that maybe it should be corrected, and a proper joint appendix filed, or a correction to the joint appendix. Do you have any more questions? Thank you, Mr. Davis. Mr. Charles, you have three minutes, if you need them. I'll be brief, Your Honor. I'll address a couple of points. Your Honor, first I'll go back to the sanctions motion. Again, it was a Rule 37 motion, not a Rule 11 motion. If you look at the first page of the magistrate judge's report and recommendation, it says, and that's at 12.330, it clearly states that Indovos and Salovas bring a motion for sanctions against Excel, requesting that the court dismiss Excel's claims against them. There was not a request for monetary sanctions with respect to that motion. It was a request for dismissal. But the other side just said that they asked for fees. I'm reading the report and recommendation, Your Honor. In any event, Your Honor, they couldn't ask for fees because it would have violated the automatic stay in Excel's bankruptcy. I guess the record will reflect proper request. We'll take a look at it. Okay. In that context, I'll note, Your Honor, that the magistrate judge didn't rule. The magistrate judge issued a report and recommendation, and that report and recommendation issued in November of 2006. The district court didn't take any action on that for over a year, and that gets to the point that we didn't try some sort of tactical ploy by noticing this appeal, trying to get around the motion for terminating sanctions. The motion for terminating sanctions was moot when it was filed, but we had no choice but to notice this appeal. And quite frankly, the motion was brought against us. We had no interest in trying to push that motion forward. They let it sit on the court's docket for a year without trying to do anything to have the court rule on it. The first time that they ever took any action on the motion for terminating sanctions was after Excel was granted summary judgment, and they asked for a status conference in, I believe, March or April, April of 2008, saying we want to discuss resolution of the motion for terminating sanctions. That's the first time they raised that issue, and the court improperly determined that the automatic stay applied to it, but there was no tactical ploy. We wanted to get this case up on appeal because we felt we were agreed by the summary judgment order, but there was no tactical ploy to try to avoid the merits of the motion for terminating sanctions, and quite frankly, Your Honor, it was moot. And if the court reverses and it doesn't order the case be dismissed, if it goes back, they can reassert the motion at that time. Because in my view, every case that I've had that's gone to judgment, if there's a pending motion and the case goes to judgment, all claims are merged into that judgment. Everything before the court goes in that is merged in that judgment. And to the extent that you've got a motion for terminating sanctions that goes to the merits, it was moot, and it would have gone off calendar as a matter of course when judgment was issued. But you're proceeding on a basis that it was moot when it was filed. It was moot when it was filed because we had dismissed our claims and the court had adjudicated the issue. So, yeah, it was moot when it was filed. And then I'll just go back to Mr. Mendelson's testimony, Your Honor. I read the entirety of that transcript, and I didn't pick and choose, and I think the question could not be more clear that was posed to him. Mr. Mendelson was asked, what do you mean by clear title? Do you mean ownership of the patents and smart touch? And that word was used, and he said my phrase would be unrestricted rights to use it. That's not pick and choose, and that question could not be more clear. And I notice I'm out of time. Thank you, Mr. Charles. Case submitted.